IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FONOVISA, INC., *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 07-1515 |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| DOES 1 - 9, | ) | |
| | ) | Doc. No. 6 |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

LENIHAN, M.J.

Currently pending before the Court is Defendant Doe #3's Motion to Vacate the Order Granting Expedited Discovery, Motion to Dismiss the Complaint, Motion to Quash the Subpoena, and Motion to Dismiss for Improper Joinder, which the Court has converted to a Motion for Severance (Doc. No. 6). For the reasons set forth below, the Court will grant Defendant Doe # 3's Motion for Severance, but will deny Defendant Doe #3's remaining motions.

**I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY**

Plaintiffs are sixteen different business entities who claim copyright ownership or exclusive licensing rights under federal copyright law with respect to certain copyrighted sound recordings, some of which are listed in Exhibit A to their Complaint. (Compl. ¶ 23.) Plaintiffs claim valid copyright registration with respect to the sound recordings listed on Exhibit A (collectively the "copyrighted recordings"). (*Id.*) Plaintiffs instituted the present lawsuit alleging that the Doe Defendants have infringed on their exclusive rights under the Copyright Act, 17 U.S.C. § 101 *et seq.*, to reproduce and distribute the copyrighted recordings to the public. (Compl. ¶ 24.) In

particular, Plaintiffs contend that without their consent or authorization, each Defendant has continuously used and continues to use an online media distribution system to download and/or distribute to the public certain of the copyrighted recordings. (Compl. ¶ 25.)

Plaintiffs have identified each Defendant only by the Internet Protocol ("IP") address assigned to that Defendant by his or her Internet Service Provider ("ISP") on the date and time of that Defendant's alleged infringing activity. (Compl. ¶ 20.) In order to obtain the actual names and addresses of each Defendant, Plaintiffs filed an *Ex Parte* Application for Leave to Take Immediate Discovery (Doc. No. 3) ("*Ex Parte* Application"), and memorandum of law in support thereof (Doc. No. 4). In their *Ex Parte* Application, Plaintiffs requested leave to serve a Rule 45 subpoena on the Defendants' ISP,[1] requesting documents that identify each Defendant's true name, current (and permanent) addresses and telephone numbers, e-mail addresses, and Media Access Control ("MAC") addresses. Plaintiffs contended that this information is necessary to identify the Doe Defendants and allow them to pursue this lawsuit to protect their copyrights against repeated infringement.

In support of this request, Plaintiffs submitted that good cause exists for conducting this limited discovery in advance of a Rule 26(f) conference, where there are no known defendants with whom to confer. According to Plaintiffs, good cause exists here because the Complaint alleges claims of infringement; there is a very real danger the ISP will not preserve the information Plaintiffs seek long enough to be available through the normal discovery process; the discovery requests are narrowly tailored so as not to exceed the minimum information needed to advance this

---

1. Defendants' ISP has been identified as Carnegie Mellon University. (Pls.' Mem. of Law in Support of *Ex Parte* Application, at 2.)

lawsuit or to prejudice Defendants; and expedited discovery will substantially contribute to moving this case forward. In consideration of Plaintiffs' well-founded arguments, the Court entered an Order on December 19, 2007, granting Plaintiffs' *Ex Parte* Application (Doc. No. 5).

Subsequently, Plaintiffs served a Rule 45 subpoena on the ISP, who apparently notified each of the Doe Defendants of the subpoena and provided them with an opportunity to object prior to complying with the subpoena. (Pls.' *Ex Parte* Application, at 2 n. 1.) On February 14, 2008, Defendant Doe # 3 ("Doe # 3") filed an objection in the form of several motions, which includes a Motion to Vacate this Court's Order dated December 19, 2007 granting Plaintiffs' *Ex Parte* Application (Doc. No. 5), a Motion to Quash the Subpoena, a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6), and a Motion to Dismiss the claims against Doe # 3 for improper joinder under Rule 20, all of which are set forth in one document (Doc. No. 6). In light of Doe # 3's motions, the Court entered an order on February 19, 2008, staying the responses to the discovery requests vis a vis Doe # 3 until the Court rules on the pending motions. The Court further ordered Plaintiffs to submit a response to the pending motions, which they did on March 5, 2008. Doe # 3 filed a reply on March 20, 2008 (Doc. No. 10).

The pending motions and Plaintiffs' opposition thereto have been fully briefed and these motions are now ripe for disposition.

## II.    ANALYSIS

### A.    Doe # 3's  Motion to Dismiss Pursuant to Rule 12(b)(6)

As a preliminary matter, the Court addresses Doe # 3's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), since  a decision in favor of Doe # 3 would in essence render the other motions moot. Doe # 3 submits that the only exclusive right that could possibly be implicated here

is the copyright owner's right to distribution, and Plaintiffs have failed to allege in their Complaint sufficient facts to show that Defendants have actually distributed copies of the copyrighted recordings for the purposes of direct or indirect commercial advantage. Doe # 3 cites a number of cases for the proposition that no infringement occurs of a copyright owner's exclusive distribution rights where the defendant merely offers to distribute or copies the copyrighted material, but does not consummate the sale.[2] Plaintiffs counter with citations to authority that hold under almost identical facts that such conduct constitutes "deemed distribution" and therefore infringes a copyright owner's exclusive right to distribute.[3] Determination of whether a "distribution" occurred, however, depends on the factual circumstances of the case. At this stage of the litigation, the Court finds that Plaintiffs have alleged sufficient facts regarding "distribution," which must be taken as true, to survive a Rule 12(b)(6) motion.

In deciding a motion to dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(6), the Court must accept as true all allegations of the Complaint and all reasonable factual inferences must be viewed in the light most favorable to the Plaintiffs. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985) (citations omitted). The Court, however, need not accept inferences drawn by Plaintiffs if they are unsupported by the facts as set forth in the Complaint. *See Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions

---

2.  All of the cases cited by Doe # 3 are distinguishable on one of the following grounds: (1) the cited cases are not on point factually with the case at bar, (2) the decisions were made on summary judgment motions, or (3) plaintiffs in those cases failed to meet the notice and pleading standard in *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007).

3.  *See, e.g., A & M Records, Inc. v. Napster,* 239 F.3d 1004 (9th Cir. 2001); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913 (2005).

set forth as factual allegations. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citing 5 C. Wright & A Miller, *Federal Practice & Procedure* § 1216, pp. 235-36 (3d ed. 2004)). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Thus, a claim will be dismissed under Rule 12(b)(6) if it does not allege "enough facts to state a claim for relief that is plausible on its face." *Id.*

Recently, the Court of Appeals for the Third Circuit opined as to the impact of the *Twombly* decision on the pleading standard for purposes of a Rule 12(b)(6) motion:

> In light of *Twombly,* Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice, but also the "grounds" on which the claim rests.

*Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly*, 127 S.Ct. at 1965 n. 3).[4] Thus, the Court of Appeals concluded that after *Twombly,* it is no longer sufficient to merely allege the elements of a cause of action; rather, *Twombly* requires that the complaint "'allege facts suggestive of [the proscribed] conduct.'" *Id.* at 233 (citing *Twombly*, 127 S.Ct. at 1969 n. 8). In summary,

---

4. Rule 8 requires *inter alia* "a short and plain statement of the claim showing that the pleader is entitled to relief . . .." Fed.R.Civ.P. 8(a)(2). This statement must provide the defendant with fair notice of the plaintiff's claim and the grounds upon which it is predicated. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citation omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* at 512 (citations omitted).

> "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

*Id.* at 234 (quoting *Twombly,* 127 S.Ct. at 1965).

Viewed in light of the forgoing liberal pleading standards, this Court finds that at this early stage of the proceedings, Plaintiffs have alleged sufficient facts (taken as true) to suggest conduct that satisfies the required elements of a copyright infringement claim against the Doe Defendants. A plaintiff asserting a claim of copyright infringement need only prove two things: (1) that the plaintiff owns a valid copyright, and (2) that the defendant violated one or more of the exclusive rights set forth in 17 U.S.C. § 106. *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); 17 U.S.C. § 501(a) & (b). Plaintiffs have alleged sufficient facts to support both of these elements. Plaintiffs assert that they own the copyrights of the sound recordings at issue and have obtained valid certificates of copyright registration for each of the copyrighted recordings. (Compl. ¶ 23.) Plaintiffs further allege that each of the Defendants has used an online distribution system to download and/or distribute to the public certain of the Copyright Recordings, and as to each Defendant, have provided a sample list of the copyrighted recordings each Defendant is alleged to have downloaded and/or distributed. (Compl. ¶ 25.) In addition, Exhibit A to the Complaint provides sufficient details as to each Defendant regarding his or her IP Address, the P2P Network used (Gnutella), number of audio files accessed, and sample lists of the copyrighted recordings actually downloaded and/or distributed. These factual allegations clearly meet the notice pleading and *Twombly* standards to survive a Rule 12(b)(6) motion. *See Sony Music Entm't Inc. v. Does 1 - 40,* 326 F.Supp. 2d 556, 565 (S.D.N.Y. 2004); *LaFace Records, LLC v. Does 1-5,* No. 2:07-cv-187,

2008 WL 513508, * 5 (W.D.Mich. Feb. 22, 2008).

Accordingly, the Court will deny Doe # 3's Motion to Dismiss pursuant to Rule 12(b)(6).

### B.      Motion to Dismiss Claims Against Doe # 3 for Improper Joinder

Next, the Court will consider the motion to dismiss the claims against Doe # 3 for improper

joinder.  At the outset, the Court notes that the appropriate remedy for misjoinder is severance, not

dismissal. *See* Fed.R.Civ.P. 21; *Elektra Entm't Group, Inc. v. Does 1 - 9*, No. 04 Civ. 2289 (RWS),

2004 WL 2095581, * 6 (S.D.N.Y. Sept. 8, 2004) (citations omitted).  Accordingly, the Court will

treat Doe # 3's motion as a motion for severance.[5]

Fed.R.Civ.P. 20(a)(2) provides that defendants may be joined in one action if:

> (A)      any right to relief is asserted against them jointly, severally,
> or in the alternative with respect to or arising out of the same
> transaction, occurrence, or series of transactions or
> occurrences; and
> (B)      any question of law or fact common to all defendants will
> arise in the action.

Rule 20 further provides that the court may issue any order that it deems necessary, including an

order for separate trials, to protect a party against embarrassment, delay, expense, or other prejudice

that arises from inclusion of claims by or against another party.  Fed.R.Civ.P. 20(b).

In deciding whether joinder is appropriate, district courts are vested with broad discretion,

even when the requirements of Rule 20(a) have been satisfied.  *Elektra Entm't,* 2004 WL 2095581,

at *6 (citing *Ghaly v. U.S. Dep't of Agriculture,* 228 F.Supp. 2d 283, 292 (S.D.N.Y. 2002)).  The

underlying policy for the permissive joinder rule is to promote trial convenience and to expedite the

final resolution of litigation.  *Id.* (citing *Puricelli v. CNA Ins. Co.,* 185 F.R.D. 139, 142 (N.D.N.Y.

---

5.  The Court notes that Doe # 3 is not represented by counsel at the current time, and therefore,
the Court may liberally construe Doe # 3's filings.

1999) (other citation omitted)); *Mosley v. Gen. Motors Corp.,* 497 F.2d 1330, 1332 (8th Cir. 1974) (citing 7 C. Wright, *Federal Practice & Procedure* § 1652 at 265 (1972)). Thus, the trend under the federal rules "is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966) (footnote omitted).

In determining whether the facts alleged in a given case constitute a single transaction or occurrence under Rule 20, courts have generally adopted a case-by-case approach. *Mosley,* 497 F.2d at 1333 (citing 7 C. Wright, *Federal Practice & Procedure* § 1653 at 270). Relying on the Supreme Court's interpretation of the terms "transaction or occurrence" as contained in Fed.R.Civ.P. 13(a),[6] the court of appeals in *Mosley* concluded by analogy that "Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary." 497 F.2d at 1333.[7]

Doe # 3 makes three arguments in support of its position that joinder here is improper. First, Doe # 3 argues that Plaintiffs' allegations regarding the basis for joinder of Does 1-9 (Compl. ¶ 20) do not satisfy the requirements of Rule 20, in that "mere allegations of similar acts violating a single law, even if those acts use a common infrastructure such as the Internet or a particular network, do

────────────────────

6. In construing the meaning of the term "transaction" for purposes of Rule 13(a), the Supreme Court has noted that "'[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610 (1926).

7. In *Mosley,* each of ten plaintiffs alleged that he had been injured by the same general policy of discrimination by the defendant corporation. The court of appeals concluded that a company-wide policy purportedly designed to discriminate against blacks in employment arose out of the same series of transactions or occurrences for purposes of Rule 20(a). 497 F.2d at 1334.

not create the common nexus of facts required to meet the transactional test set forth in the Rule." (Def. Doe # 3's Mem. in Supp. at 17.) Doe # 3 submits that in the context of a copyright action against multiple defendants, the transactional test requires either concerted action or some other direct connection between the defendants beyond the infrastructure they use and the fact that they all happened to be accused of a similar act. (*Id.*) In support, Doe # 3 cites a number of non-precedential district court opinions involving very similar facts in which the courts found misjoinder and ordered the claims severed.[8] Second, Doe # 3 contends that Defendants will be prejudiced by the increased expenses from their counsel having to review the filings by and against each Defendant, jury confusion, and disclosure of confidential student information to other defendants, that will result from the improper joinder of nine Defendants. Finally, Doe # 3 argues that improper joinder hinders this Court's administration of justice by disproportionately weighing on its resources without the concomitant filing fees, and by skewing the Court's tracking of case dispositions.[9]

In response to Doe # 3's arguments, Plaintiffs counter that they have satisfied the transaction and occurrence requirements of Rule 20, and numerous courts addressing this issue under identical facts have found joinder appropriate.[10] In addition, Plaintiffs submit that joinder here promotes the

---

8. *See, e.g., Interscope Records v. Does 1-25,* No. 06:04-CV-197-ACC-DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004); *Bridgeport Music, Inc. v. 11C Music,* 202 F.R.D. 229, 231 (M.D. Tenn. 2001).

9. In support of this argument, Doe # 3 cites two unreported, unpublished district court opinions, without attaching copies. *See* Notes 46-48 to Def. Doe # 3's Mem. in Supp. at 20.)

10. In support of this statement, Plaintiffs refer the Court to Exhibit 1, attached to their Memorandum of Law in Opposition to the Motion to Quash Subpoena, which lists the names of over 300 cases in which the district courts allegedly entered orders upholding joinder of multiple doe defendants under identical facts. The Court will not accept carte blanch a party's *description* of the ruling in a case without either a copy of the opinion and order or a citation to an electronic database or official reporter where that opinion and order can be located. Without that, the Court has no knowledge of the facts and/or circumstances that went into the deliberations in making

goals of efficiency and judicial economy.

A review of the record indicates that the copyright infringement claims alleged against Does 1 through 9 are not logically related and therefore do not constitute the same transaction or occurrence, or series of transactions or occurrences. First, the complaint does not contain any allegation that the nine Defendants are jointly or severally liable to the sixteen Plaintiffs. Second, Plaintiffs have failed to allege any facts tending to show that one or more of the Defendants has actually downloaded songs from another Defendant, which could conceivably link the Defendants or show they acted in concert. Other district courts faced with the same allegations to connect the defendants have concluded those allegations were insufficient to satisfy the transactional requirement. *See, e.g., Interscope Records v. Does 1 - 25,* No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782, * 15-16 (M.D.Fla. Apr. 1, 2004) (holding "same transaction requirement requires joint action or liability on the part of the Defendants and is not satisfied by the fact that the Defendants accessed the songs through [the same] peer-to-peer network, or the fact that Defendant [sic] are 25 of the 2.1 million subscribers who access the Internet through [the same ISP]."); *LaFace Records, LLC v. Does 1 - 38,* No. 5:07-CV-298-BR, 2008 U.S. Dist. LEXIS 14544, * 7-8 (E.D.N.C. Feb. 27, 2008) (same); *Arista Records, LLC v. Does 1 - 27,* Civ. No. 07-162-B-W, 2008 WL 222283, * 6 n. 5 (D. Me. Jan. 25, 2008) (same); *BMG Music v. Does 1 - 4,* No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, * 5-6 (N.D.Cal. July 31, 2006) (same); *Elektra Entm't,* 2004 WL 2095581, at * 6-7 (same); *Bridgeport Music, Inc. v. 11C Music,* 202 F.R.D. 229, 231 (M.D. Tenn. 2001) (same).

The courts in a number of these cases also rejected the plaintiffs' argument that they suffered

---

the rulings in those 300 plus cases.

the same harm from the alleged infringement of their copyrights by all of the defendants to establish the relatedness of the transactions for purposes of Rule 20. *Interscope Records,* 2004 U.S. Dist. LEXIS 27782, at * 15 (citing *Bridgeport Music,* 202 F.R.D. at 232). The courts reasoned that if the transactional test could be satisfied by merely alleging that the plaintiffs suffered the same harm from alleged violations of their copyrights, "a copyright plaintiff could join as defendants any otherwise unrelated parties who independently copy material owned by the plaintiff." *Bridgeport Music,* 202 F.R.D. at 232. Moreover, under this logic, there would be virtually no limit to the number of parties that could be joined, which would effectively nullify the transactional requirement.

Other than alleging that Defendants used the same peer-to-peer network to access the internet and download and/or distribute the copyrighted recordings through the same ISP, Carnegie Mellon University, the Plaintiffs here have failed to allege any other facts to connect the Defendants. None of the Defendants downloaded and/or distributed the same copyrighted recordings belonging to the same set of Plaintiffs, and each of the Defendants accessed a different number of audio files on different dates. (Ex. A to Compl.)[11] Specifically, with regard to Doe # 3, the alleged unlawful downloading and/or distribution occurred with regard to seven different copyrighted recordings owned by six of the Plaintiffs, and said conduct is alleged to have occurred on February 28, 2007. None of the other Defendants is alleged to have downloaded and/or distributed any of the same

---

11. The only exception is that Doe # 1 and Doe #2 accessed the peer-to-peer network on the same date, February 6, 2007. However, Does # 1 and #2 had only two Plaintiffs in common–UMG Recordings, Inc. and Sony BMG Music Entertainment. Doe # 1 allegedly violated the copyrights of two other Plaintiffs, Capitol Records and Virgin Records America, Inc., while Doe # 2 allegedly violated the copyrights of three other Plaintiffs, Atlantic Recording Corporation, Elektra Entertainment Group Inc., and Priority Records LLC. Doe # 1 accessed 407 audio files, while Doe # 2 accessed 286 audio files. (Ex. A to Compl.)

copyrighted recordings that Doe # 3 is alleged to have downloaded and/or distributed. Therefore, since the claims against the different Defendants most likely will involve separate issues of fact and separate witnesses, different evidence, and different legal theories and defenses, which could lead to jury confusion, separate trials will be required for each Defendant.

The cases cited by Plaintiffs in support of their position are distinguishable. None of those cases involved the alleged infringement of copyright owners' exclusive rights to their copyright sound recordings, but rather, discussed generally the satisfaction of the requirements for permissive joinder under Rule 20(a). In addition, as noted earlier, Plaintiffs have failed to provide the Court with copies of unreported decisions allegedly on point, and the Court has not found any authority to suggest that joinder of Does 1 - 9 is appropriate here.

Therefore, given the different factual contexts of the alleged infringement for each Defendant and the absence of any evidence showing joint action by Defendants, other than their use of the same peer-to-peer network to access the copyright recordings and the same ISP, the Court finds that Plaintiffs have failed to satisfy the requirements for permissive joinder under Rule 20(a). Accordingly, the Court will order the claims against Does # 1 -2, and 4 - 9, be severed.

## C. Motions to Quash Subpoena and Vacate Order Granting Expedited Discovery

In support of its motion to quash the subpoena, Doe # 3 submits four arguments: (1) 47 U.S.C. § 551(2)(B), which authorizes cable operators to disclose personally identifiable information when ordered to do so by a court, does not support the Court's order because CMU is not a cable operator under the Cable Communications Policy Act of 1984, 47 U.S.C. § 551(c)(2)(B) ("CCPA"); (2) the Digital Millennium Copyright Act ("DMCA"), specifically 17 U.S.C. § 512(h), does not provide authority for a subpoena under the circumstances at issue; (3) the subpoena is not

appropriate under Rules 26 and 45 of the Federal Rules of Civil Procedures; and (4) the subpoena is overly broad and will unnecessarily disclose confidential information. In response, Plaintiffs submit that their request to serve a subpoena on the ISP was not predicated on either the CCPA or the DMCA, and therefore the cases cited by Doe # 3 with regard to those statutes are simply inapposite here. Plaintiffs further argue that Doe # 3 has failed to identify any basis under Rule 45(c)(3) to support its motion to quash the subpoena, nor could it as Doe # 3's factual arguments are simply not a valid basis on which to quash a subpoena. Plaintiffs submit that Doe # 3's arguments are premature, and Doe # 3 will have ample opportunity to deny Plaintiffs' allegations and to contest their theory of the case. Finally, Plaintiffs submit that the First Amendment does not protect copyright infringement, and even if Doe # 3's internet activity was entitled to some protection, any expectation in remaining anonymous was minimal and clearly outweighed by Plaintiff's interests in disclosure.

As a preliminary matter, the Court notes that normally the person or entity seeking to quash a subpoena is the person or entity who has been served with the subpoena and must comply with the subpoena's directives. Indeed, all of the bases for quashing a subpoena under Rule 45(c)(3)(A) appear to be directed to the entity upon whom the subpoena was served. On the other hand, Rule 26 provides a mechanism for parties to object to discovery on a number of grounds.[12] Doe # 3 is named as a Defendant in the instant matter; however, because Plaintiffs have not yet ascertained Doe

---

12. If a party believes that the discovery sought by an opposing party is either not relevant to a claim or defense, or if relevant, seeks information that is either privileged, or unreasonably cumulative or duplicative, or can be obtained from another source that is more convenient, or less burdensome or expensive, or seeks confidential commercial information, then the party objecting to such discovery may request, and the Court may grant, a protective order upon good cause shown, either limiting the scope of, or forbidding, disclosure or discovery. *See* Fed.R.Civ.P. 26(b)(2)(C) & (c).

# 3's identity, Doe # 3 has not been served with original process, thus the need for an *ex parte* application for expedited discovery. Before responding to the subpoena, CMU sent a copy of it to Doe # 3, who has intervened at this juncture to lodge objections to the subpoena with the sole intent of preventing Plaintiffs from discovering Doe # 3's identity and contact information, and therefore preventing Plaintiffs from proceeding with their copyright infringement claims against Doe # 3. For purposes of the pending motions, none of the arguments raised by Doe # 3 appears to fall within the scope of objections to discovery under Rule 26. The Court turns now to the specific arguments raised by Doe #3.

Doe # 3's first two arguments in support of quashing the subpoena are wholly lacking in merit. Nowhere in the Order dated December 18, 2007 (Doc. No. 5) does the Court state that 47 U.S.C. § 551(2)(B) provides authority for serving a subpoena on CMU, nor is Plaintiffs' *Ex Parte* Application predicated on that statute. Likewise, neither Plaintiffs' request for expedited discovery nor the Court's order relies on the DMCA for issuing the subpoena, but rather, relies on 20 U.S.C. § 1232g(b)(2)(B) of the Family Educational Rights and Privacy Act ("FERPA"),[13] and therefore, the procedural requirements in section 512(h) do not apply here. Accordingly, Doe # 3's first two arguments are devoid of merit.

To the extent that Doe # 3 suggests that FERPA does not permit disclosure of personally identifiable information, that argument is equally devoid of merit. Section 1232g(b)(2) expressly

---

13. In their *Ex Parte* Application, Plaintiffs specifically informed the Court that they intended to serve a Rule 45 subpoena on the ISP. In their Memorandum of Law in support thereof, Plaintiffs indicated that issuance of a subpoena was authorized by FERPA, 20 U.S.C. § 1232g(b)(2)(B), and requested the Court to indicate as much in its order granting expedited discovery. The Order dated December 18, 2007 specifically states that disclosure of the information requested in the subpoena is ordered pursuant to 20 U.S.C. §1232g(b)(2)(B). (Doc. No. 5.)

authorizes a university to disclosure a student's "directory information" without the student's prior consent so long as certain conditions have been satisfied. "Directory information" is defined under the regulations promulgated pursuant to FERPA as:

> information contained in an education record of a student that would not generally be considered harmful or an invasion of privacy if disclosed. It includes, but is not limited to, the student's name, address, telephone listing, electronic mail address, photograph, date and place of birth, major field of study, dates of attendance, grade level, enrollment status . . . , participation in officially recognized activities and sports, weight and height of members of athletic teams, degrees, honors and awards received, and the most recent education agency or institution attended.

34 C.F.R § 99.3 (citing as authority 20 U.S.C. § 1232g(a)(5)(A)). In the case at bar, all of the information requested in the subpoena, with the exception of the MAC addresses, constitute "directory information." The MAC address does not appear to fall within the purview of FERPA,[14] and therefore, is not restricted by FERPA. In addition, all of the conditions for disclosure have been satisfied here. Disclosure is sought in compliance with a judicial order pursuant to a lawfully issued subpoena, and CMU has provided Doe # 3 with notice of the subpoena in advance of compliance, and indeed, Doe # 3 has sought protective action by filing the pending motions. 20 U.S.C. §1232g(b)(2)(B); 34 C.F.R. § 99.31(a)(9)(i) & (ii); *see also Outreach Ctr. v. City of Philadelphia,* 233 F.R.D. 419, 420 (E.D.Pa. 2005) (holding "[u]nder FERPA, an educational institution may release personally identifiable information contained in a student's records if the institution is subpoenaed."); *Warner Bros. Records, Inc. v. Does 1-14,* No. 8:07-cv-625-T-24TGW, 2007 WL

_____

14. The MAC address is comprised of six two-digit hexadecimal numbers separated by colons, that uniquely identifies each piece of computer hardware connected to the university's network. http://www.techterms.com/definition/macaddress (last visited April 1, 2008). Accordingly, the MAC address would not be part of a student's "education records," as that term is defined under 34 C.F.R. § 99.3.

4218983, * 2 (M.D.Fla. Nov. 29, 2007) (same).  Accordingly, the Court finds that FERPA does not

bar the disclosure of the information requested in the subpoena issued to CMU regarding Doe # 3.

In its third argument in support of quashing the subpoena, Doe # 3 contends that the Federal

Rules of Civil Procedure do not permit subpoenas under the present circumstances.  According to

Doe # 3, these "circumstances" consist of alleged infirmities with the collection of the data,[15] and

objections that CMU may raise if it were seeking to quash the subpoena,[16] which it is not.

Neither of these "circumstances" provides a basis under Rule 45(c)(3)(A) for quashing the

subpoena served on CMU regarding Doe # 3.[17]  If Doe # 3 believes that it has been improperly

identified by the ISP, Doe # 3 may raise, at the appropriate time, any and all defenses, and may seek

discovery in support of its defenses.

Equally unavailing is Doe # 3's argument  that its First Amendment rights will be violated

if the subpoena is not quashed because Plaintiffs have failed to establish a *prima facie* claim of

copyright infringement, and therefore, its expectation of privacy[18] outweighs Plaintiffs' interests in

obtaining the identities of the alleged infringers.   It is clear that the First Amendment does not

---

15.  Doe # 3 contends that Plaintiffs' intended method of identification of the alleged infringers is not reliable.

16.  Doe # 3 suggests that Plaintiffs' subpoena seeks information that CMU does not readily possess and therefore would be forced to undertake an investigation to create discovery for Plaintiffs, and obligation not imposed by Rule 45.  Doe # 3 offers no foundation for this allegation, but in any event, is not the appropriate person to lodge this objection under Rule 45(c)(3)(A).

17.  Ordinarily, a party wishing to object to discovery would move for a protective order under Rule 26(c).  As explained above, Doe # 3 has not provided any basis, let alone a  "good cause" basis, under Rule 26(c) for protecting it from release of information leading to its identity and location.

18.  Doe # 3 contends the CMU user files contain highly confidential and sensitive information, the disclosure of which could violate the subscribers' privacy rights.

protect copyright infringement.  *See, e.g., Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 555-56 (1985).  In cases such as the one *sub judice,* where anonymous persons are allegedly using P2P file copying networks to download, distribute, or make sound recordings available, such conduct has been found to constitute protected First Amendment speech.  *Sony Music,* 326 F.Supp. 2d at 564.  However, the protection afforded such speech has been limited, and when weighed against other factors supporting disclosure of the actors' identities, has given way.  *Id.* at 564-67.

In *Sony Music,* the district court considered five factors in weighing the need for disclosure versus First Amendment interests: "(1) concrete showing of a *prima facie* claim of [copyright infringement], . . . (2) specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) a central need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of privacy."  *Id.* at 564-65 (internal citations omitted).  The district court in *Sony Music* concluded, under almost identical facts, that the doe "defendants' First Amendment right to remain anonymous must give way to the plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims."  *Id.* at 567 (internal citations omitted).

Applying these factors to the case at bar, the Court concludes that Plaintiffs' need for disclosure clearly outweighs Doe # 3's First Amendment interest in remaining anonymous.  As to the first factor, the Court finds the Complaint and Exhibit A thereto allege sufficient facts to establish a *prima facie* claim of copyright infringement against the Doe Defendants.   At this stage of the litigation, Plaintiffs have set forth in Exhibit A sufficient evidence of acts of infringement by subscribers identified by IP addresses.  *See, id.* at 565  (finding a concrete showing of *prima facie* copyright infringement based on virtually the same types of evidence).  With regard to the second

factor, the subpoena directed to CMU is narrowly tailored to provide only that information sufficient to identify the Defendants.[19]  Moreover, Because the Court has ordered the claims severed, the possibility of other Defendants receiving each other's highly confidential information has been eliminated.  As to the third factor, such information/discovery is needed to be able to effectuate service of the Complaint on the Doe Defendants[20] and is not available from any other source.  (Decl. of Carlos Lunares, ¶23 (Ex. A to Mem. of Law in Supp. of *Ex Parte* Application).)  Without the subpoenaed information,  Plaintiffs will be unable to proceed against the alleged infringers and recover for the infringement of their copyrights.  Therefore, the fourth factor weighs in favor of disclosure.  Finally, Doe # 3's expectation of privacy is minimal given the nature of the P2P file sharing.  *See In re Verizon Internet Serv., Inc.,* 257 F.Supp. 2d at 244, 267 (D.D.C. (2003) (holding "if an individual subscriber opens his computer to permit others, through peer-to-peer file-sharing, to download materials from that computer, it is hard to understand just what privacy expectation he or she has after essentially opening the computer to the world."), *rev'd on other grounds, sub nom Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Serv., Inc.,* 351 F.3d 1229 (D.C. Cir. 2003). Thus, it is clear that a Doe Defendant, who allegedly used the internet to unlawfully download and disseminate copyrighted sound recordings has a minimal expectation of privacy in remaining anonymous, and such expectation is clearly outweighed by Plaintiffs' *prima facie* showing of copyright infringement, the narrowly tailored discovery request directed to CMU, and the lack of alternate means to obtain the identities of the Doe Defendants, without which Plaintiffs will be

19.  For this reason, the Court further finds that the subpoena is not overly broad.

20.  For this reason, the cases cited by Doe # 3 regarding discovery being allowed only after service of defendants are inapposite.

unable to proceed.

Finally, as to Doe # 3's request that the *Ex Parte* Application be vacated, Doe # 3 submits that there is a split of authority as to whether the standard to be used in determining whether to grant the *Ex Parte* Application should have been the more stringent standard enunciated in *Notaro v. Koch,* 95 F.R.D. 403, 405 (S.D.N.Y. 1982), which mainly follows the standard required for obtaining a preliminary injunction,[21] as opposed to the good cause or reasonableness standard actually applied here.[22] Doe # 3 argues that regardless of which standard is applied, the cases cited by Plaintiffs do not support expedited discovery here, but actually support Doe # 3's position, as those cases involved requests for a preliminary injunction, unlike the present lawsuit, and absent such a request, no authority exists for granting expedited discovery under Rule 45. The Court disagrees with Doe # 3. None of the cases cited by the parties or reviewed by the Court hold that expedited discovery

---

21. The *Notaro* factors include: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery [outweighs] the injury that the defendant will suffer if the expedited discovery is granted." 95 F.R.D. at 405.

22. Good cause is usually found where the plaintiff's need for expedited discovery, in consideration of the administration of justice, outweighs the possible prejudice or hardship to the defendant. *Semitool, Inc. v. Tokyo Electron America, Inc.,* 208 F.R.D. 273, 276 (N.D.Cal. 2002); *Metal Bldg. Components, L.P. v. Caperton,* CIV-04-0256 MV/DJS, 2004 U.S. Dist. LEXIS 28854, *10 (D.N.M. Apr. 2, 2004). Situations where good cause is frequently found include when a party seeks a preliminary injunction, and when physical evidence may be consumed or destroyed with the passage of time, thus causing one or more parties to be disadvantaged. *Metal Bldg. Components,* 2004 U.S. Dist. LEXIS 28854, at * 10-11 (citing *Ellsworth Assocs., Inc. v. United States ,* 917 F.Supp. 841, 844 (D.D.C. 1996); *Pod-Ners, LLC v. Northern Feed & Bea of Lucerne LLC,* 204 F.R.D. 675, 676 (D. Col. 2002)). In addition, courts have frequently found good cause exists in cases involving claims of infringement and unfair competition. *Semitool,* 208 F.R.D. at 276 (citing *Benham Jewelry Corp. v. Aron Basha Corp.,* No. 97 CIV 3841 RWS, 1997 WL 639037, * 20 (S.D.N.Y. Oct. 14, 1997)); *Pod-Ners,* 204 F.R.D. at 676 (citing *Benham Jewelry, supra*).

under Rule 26(d) can only be granted in situations where the plaintiff has requested a preliminary injunction. Indeed, in a case on all fours with the present dispute, the district court found that plaintiffs demonstrated sufficient good cause to warrant expedited discovery. *See Interscope Records v. Does 1 - 14,* No. 5:07-4107-RDR, 2007 U.S. Dist. LEXIS 73627, * 4 (D. Kan. Oct. 1, 2007). In addition, numerous other district courts have also granted expedited discovery to record companies, such as Plaintiffs, in copyright infringement actions seeking to identify Doe defendants upon a showing of good cause. (*See, e.g.,* Pls.' Ex. B attached to Mem. of Law in Supp. of *Ex Parte* Application (Doc. 4-3).) This Court previously found good cause existed for ordering expedited discovery. Doe # 3 has failed to provide any factual or legal basis to suggest otherwise. Accordingly, the Court declines Doe # 3's invitation to vacate its order granting expedited discovery. The Court will order the stay of discovery lifted as to Doe # 3, vis a vis the subpoena issued to CMU.

III.  **CONCLUSION**

For the reasons set forth above, the Court will deny Doe # 3's Motion to Dismiss the Complaint, Motion to Quash the Subpoena, and Motion to Vacate the Order Granting Expedited Discovery (Doc. No.6). However, the Court will grant Doe # 3's Motion for Severance (Doc. No. 6). An appropriate Order follows.

**ORDER**

**AND NOW, this 3rd day of April, 2008,** after due consideration of Doe # 3's Motion to Vacate the Order Granting Expedited Discovery, Motion to Dismiss the Complaint, Motion to Quash

the Subpoena, and Motion to Dismiss for Improper Joinder (Doc. No. 6), and Plaintiffs' responses thereto, and the memoranda of law in support and in opposition thereto,

**IT IS HEREBY ORDERED** that the Motion to Dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) is **DENIED;** however, Doe # 3 is not precluded from raising the issues set forth therein in a motion for summary judgment at the appropriate time following discovery.

**IT IS FURTHER ORDERED** that Doe # 3's Motion to Dismiss the Claims against it for Improper Joinder, which the Court has converted to a Motion for Severance, is **GRANTED**. All claims except those raised by the Plaintiffs against Doe # 3 shall be **SEVERED.** The Plaintiffs' claims against Defendants Does # 1 - 2 and 4 - 9 shall be **DISMISSED WITHOUT PREJUDICE** effective April 21, 2008.[23] Plaintiffs may initiate eight (8) separate new actions against Defendants Does # 1-2 and 4-9 on or before April 21, 2008. Each new action filed shall include a civil cover sheet, the appropriate filing fee, and a separate complaint for each individual Doe Defendant, and Plaintiffs shall provide notice to this Court if and when the new civil actions are commenced. Under this District's local rules of civil procedure, the cases against the individual Defendants will not meet the requirements of relatedness. W.D.PA.L R 40.1.D.2.

**IT IS FURTHER ORDERED** that Doe # 3's Motion to Vacate the Court's Order Granting Expedited Discovery is **DENIED**.

**IT IS FURTHER ORDERED** that Doe # 3's Motion to Quash Subpoena is **DENIED.**

**IT IS FURTHER ORDERED** that the Court's Order dated February 19, 2008 staying all discovery as to Doe # 3 is hereby lifted effective April 21, 2008. However, should an appeal be filed

---

23. Should Plaintiffs file an appeal to the District Judge on the issue of severance, the dismissal shall be stayed, and should the appeal be denied, Plaintiffs shall have 14 days from the disposition of the appeal to take the action described above.

on or before April 21, 2008, the stay will remain in effect until a decision is issued on the appeal. If the appeal is denied, the stay will be lifted on the date of disposition of the appeal.

**IT IS FURTHER ORDERED** that Plaintiffs shall serve as soon as practicable on the ISP, Carnegie Mellon University, a copy of this Opinion and Order, as well as all future filings dealing with the matters in this Order, including any appeal to the district judge, and file proof of such service with the Court.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rules 72.1.3.B. and 72.1.4.B. of the Western District of Pennsylvania Local Rules governing Magistrate Judges, the parties are allowed ten (10) days from the date of issuance of this Order to file a notice of appeal, which designates the part or part(s) of the Order objected to and the basis for said objection. Any party opposing the appeal shall have ten (10) days from the date of service of the notice of appeal to respond thereto. Failure to file a timely notice of appeal may constitute a waiver of any appellate rights.

BY THE COURT:

LISA PUPO LENIHAN
U.S. Magistrate Judge

cc:    All Counsel of Record
*Via Electronic Mail*

Doe # 3
P.O. Box 241532
Little Rock, AR 72223
*Via U.S. Mail, First Class*